PEOPLE v KRAUSE

PEOPLE v NEWTON

Docket Nos. 117728, 117729. Submitted January 10, 1990, at Detroit. Decided August 29, 1990. Leave to appeal applied for in *Newton*.

Kherrel Krause and William M. Newton pled guilty in Detroit Recorder's Court, Dominick R. Carnovale, J., to charges of possession with intent to deliver at least 225 grams but less than 650 grams of a mixture containing cocaine. The court departed from the ten-year statutory minimum sentence and entered a sentence of five to thirty years imprisonment for each defendant on the basis that the defendants had histories of family problems which appeared to have been resolved, the amount of the mixture containing cocaine was just twelve grams over the minimum for this offense, defendants had no criminal histories, they had work histories, and they were middlemen in the situation. As to defendant Krause, the court also stated that he had worked with the police on former problems. The prosecuting attorney appealed as of right contending that the reasons for departure given by the court are not substantial and compelling reasons to depart from the statutory minimum sentence.

The Court of Appeals *held*:

1. A prosecuting attorney may take an appeal as of right from a defendant's sentence.

2. A sentencing judge must begin with the presumption that the mandatory minimum sentence is appropriate and may not depart therefrom unless there are substantial and compelling reasons to do so. The bases for determining departure must be objective and verifiable, i.e., actions or occurrences which are external to the minds of the judge, the defendant, and others involved in making the decision and must be capable of being confirmed. The mere fact that an action is taken or an incident occurs after a defendant's arrest does not necessarily make that

REFERENCES

Am Jur 2d, Appeal and Error § 268; Criminal Law §§ 537, 541.

See the Index to Annotations under Appeal and Error; Sentence and Punishment.

action or incident a subjective one. It is only when the sentencing court, upon an evaluation of all the objective, verifiable information, reaches the conclusion that the collective facts provide substantial and compelling reasons to depart from the mandatory sentence that it may, in the exercise of discretion, decide to do so.

3. The factors relied on by the court in departing from the statutory minimum sentence were not substantial and compelling. Defendants' sentences are vacated and the cases are remanded for resentencing, at which the court must begin with the mandatory sentences and require defendants to demonstrate objective and verifiable reasons to justify departure. Only if these are exceptional cases should defendants receive sentences less than the statutorily mandated minimum.

Reversed and remanded.

GRIFFIN, P.J., dissented. He would hold that the articulated reasons for deviation need not necessarily be objective and verifiable so long as they are substantial and compelling, that the reasons given in this case were substantial and compelling, that the sentences imposed are appropriate social responses to the crimes committed and the criminals who committed them, and that the court did not abuse its discretion in sentencing defendants. He would affirm.

1. CRIMINAL LAW — APPEAL — SENTENCING.

The prosecution may appeal the sentence of a convicted defendant as of right (MCL 770.12[1]; MSA 28.1109[1]).

2. CONTROLLED SUBSTANCES — SENTENCING — MANDATORY SENTENCES — JUDICIAL DISCRETION.

The discretion of a trial court to depart from the mandatory minimum sentence set for controlled substance offenses is limited; a sentencing judge must begin with the presumption that the mandatory minimum sentence is appropriate and may not depart therefrom unless there are substantial and compelling reasons to do so, and the bases for determining departure must be objective and verifiable, i.e., actions or occurrences which are external to the minds of the judge, the defendant, and others involved in making the decision and are capable of being confirmed; the mere fact that an action is taken or an incident occurs after a defendant's arrest does not necessarily make that action or incident a subjective one; it is only when the sentencing court, upon an evaluation of all the objective, verifiable information, reaches the conclusion that the collective facts provide substantial and compelling reasons to depart from the mandatory sentence that it may, in the exercise of

discretion, decide to do so (MCL 333.7401[4]; MSA 14.15[7401][4]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *George E. Ward,* Chief Assistant Prosecutor, for the people.

*Ina G. Zeemering,* for Kherrel Krause.

*Robert M. Morgan,* for William Newton.

Before: Griffin, P.J., and Reilly and R. B. Burns,* JJ.

R. B. Burns, J. This is an appeal by the prosecutor of the sentences imposed on defendants after they pled guilty to possession with intent to deliver at least 225 grams but less than 650 grams of a mixture containing cocaine. MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). Pursuant to MCL 333.7401(4); MSA 14.15(7401)(4) of the amended statute, the sentencing court departed from the ten-year statutory minimum sentence prescribed by § 7401(2)(a)(ii) and entered a sentence of five to thirty years of imprisonment for each defendant.

First, the prosecutor claims that under the amended MCL 770.12(1); MSA 28.1109(1) the state may appeal a sentence as of right. This issue was decided in *People v Reynolds,* 181 Mich App 185, 188; 448 NW2d 774 (1989), where this Court determined that the amended statute authorized the prosecutor to take an appeal as of right from a defendant's sentence. Thus, an appeal as of right is available to the prosecutor in this case.

Next, the prosecutor claims that the sentencing court did not state substantial and compelling

___

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

reasons to depart from the statutory minimum
sentence.

At the time applicable herein, MCL 333.7401(2)
(a)(ii); MSA 14.15(7401)(2)(a)(ii) provided:

> A person who violates this section as to:
> (a) A controlled substance classified in schedule
> 1 or 2 which is either a narcotic drug or described
> in section 7214(a)(iv) and:
>
> \* \* \*
>
> (ii) Which is in an amount of 225 grams or more,
> but less than 650 grams, of any mixture contain-
> ing that controlled substance is guilty of a felony
> and *shall be imprisoned for not less than 10 years
> nor more than 30 years.* [Emphasis added.]

MCL 333.7401(4); MSA 14.15(7401)(4) provides:

> The court may depart from the minimum term
> of imprisonment authorized under subsection (2)(a)
> (ii), (iii), or (iv) *if the court finds on the record that
> there are substantial and compelling reasons to do
> so.* [Emphasis added.]

The reasons provided by the court in support of
its departure from the statutory minimum for the
instant defendants include the following: they had
histories of family problems which appeared to
have been resolved; the amount of the mixture
containing cocaine was approximately 237 grams,
which is just over the minimum of 225 grams for
this offense; there was a lack of criminal history;
they had a work history; and they were middle-
men in the situation. In addition, as to defendant
Krause, the court stated he had "worked with the
police on former problems." The prosecutor con-
tends that these reasons are not "substantial and
compelling."

The trial court's discretion to depart from the

statutorily mandated minimum sentences under
§ 7401 is very limited. In the recent decision of
*People v Downey,* 183 Mich App 405, 416; 454
NW2d 235 (1990), a panel of this Court stated:

> We conclude that the Legislature intended to
> give trial courts discretion to depart from the
> presumptively mandatory sentences only in excep-
> tional cases. The scope of a sentencing court's
> discretion is thus narrow, the factors used in
> departing must be objective and must be of such
> significance that the statutory sentence is clearly
> inappropriate to the offender. The trial court must
> keep in mind that the Legislature has declared
> that the mandatory minimum sentence is an ap-
> propriate sentence. The trial court must begin its
> analysis from that perspective. We review the trial
> court's decision to impose an exceptional sentence
> for an abuse of the narrowly defined discretion
> which it possesses.

The issue of what constitutes substantial and
compelling reasons was thoroughly addressed in
*Downey.* After consideration of the statutory lan-
guage, the *Downey* Court reviewed the presump-
tive sentencing statutes and guidelines from Wash-
ington and Minnesota and indicated that each of
the factors adopted by those courts as substantial
and compelling reasons to depart from those
states' presumptive sentencing guideline ranges
should be considered substantial and compelling
reasons to depart from the mandatory sentence
prescribed in § 7401 to the extent they can apply
to the offense and the offender. However, the
*Downey* Court declined to limit the applicable
considerations in departing from the mandatory
sentences to the factors on these lists. *Id.,* pp 412-
413.

The *Downey* Court determined that the Legisla-
ture has required the sentencing judge to exercise

his discretion with the presumption that the mandatory minimum sentence is the place to begin and that the sentence is appropriate and must remain there unless there are substantial and compelling reasons to depart. *Id.,* p 413. We agree with *Downey* that the bases for determining departure must be objective and verifiable. *Id.,* pp 414, 415. This means that the facts to be considered by the judge in determining substantial and compelling reasons must be actions or occurrences which are external to the minds of the judge, defendant and others involved in making the decision and must be capable of being confirmed. However, we disagree with the *Downey* panel's conclusion that, because an action is taken or an incident occurs after a defendant's arrest, such action or incident becomes subjective. See *id.,* pp 415-416. The fact that a defendant expresses remorse, whether orally or in writing, is an objective action which can be confirmed. However, a defendant's intent when he expresses remorse is within his own mind and is, therefore, subjective. It cannot be confirmed by his own statement. Consequently, his mere protestation of remorse should not be considered as a balancing factor for determining substantial and compelling reasons to depart from the mandatory sentence.

On the other hand, a defendant's active involvement in volunteer work, or cooperation with the police after his arrest, are events which exist outside the minds of the persons involved in deciding the defendant's sentence and can be verified. Although a defendant's intent in engaging in these postarrest activities may very well be self-serving, such intent does not make the acts subjective in nature. We believe these activities, being objective and verifiable, may be considered by the judge in measuring a defendant's punishment. However,

such consideration should be tempered by an awareness that postarrest actions by the defendant are often undertaken for the primary purpose of influencing the sentencing judge. It is only when the sentencing court, upon an evaluation of all the objective, verifiable information, reaches the conclusion that the collective facts provide substantial and compelling reasons to depart from the mandatory sentence that it may, in the exercise of discretion, decide to do so.

In the present case, as to defendant Krause, the court stated that he had "worked with the police on former problems." A defendant's cooperation with the police may, in some circumstances, be so "substantial and compelling" as to warrant a sentence below the statutory minimum. However, in this case the extent of defendant Krause's cooperation is not clear from the record. The extent of his cooperation must be objective and verifiable, as well as significant enough, when taken with other objective and verifiable factors, to be considered substantial and compelling in order to overcome the presumptive statutory minimum.

As to both defendants, the court stated that they were "middlemen." It is unclear why the sentencing court determined that this was a factor to be considered. Being a middleman would not be a "minor or passive" role in relation to the crime for which they were convicted. See *id.,* p 411. While defendants' work histories prior to their arrests and their lack of criminal histories are factors which can be considered, *id.,* p 415, it is doubtful these would attain the level of being substantial and compelling factors, standing alone. Further, the possible resolution of family problems and the fact that the amount of cocaine possessed was just over the minimum for the offense for which they were convicted are factors of little or no weight.

Because the sentencing court relied on factors which were not substantial and compelling in sentencing defendants, their sentences are vacated. We remand their cases for resentencing and instruct the trial court that, in doing so, it must begin with the mandatory sentences and require defendants to demonstrate objective and verifiable reasons to justify departure. Only if these are "exceptional" cases should defendants receive sentences less than the statutorily mandated minimum. *Id.*

Reversed and remanded for resentencing consistent with this opinion and in light of *Downey.* We do not retain jurisdiction.

REILLY, J., concurred.

GRIFFIN, P.J. *(dissenting).* The people appeal sentences imposed upon the defendants of five to thirty years imprisonment for possession with intent to deliver at least 225 grams but less than 650 grams of a mixture containing cocaine. MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). The sentencing judge, in departing from the presumptive ten-year minimum sentence for the offenses, articulated on the record a number of "substantial and compelling" reasons for the deviation in both cases. I find no abuse of discretion and would therefore affirm.

I

In 1987-1988, the Legislature sought to moderate our previously rigid and uncompromising drug laws by granting sentencing judges discretion to depart from certain presumptive minimum terms if the sentencing courts find on the record that "there were substantial and compelling reasons to

do so." The senate analysis of the bill package indicates that the Legislature intended to give sentencing judges "greater flexibility in making sentencing decisions based on the individual circumstances of a case":

> Also, by allowing judges to depart from the minimum terms, and reducing the minimum for larger quantities, the bill would moderate what has been an uncompromising law and would give judges greater flexibility in making sentencing decisions based on the individual circumstances of a case. [Senate Fiscal Agency Bill Analysis, SB 598, 600, 603, and 610, August 29, 1988.]

Further legislative history may be found in 68 Mich B J 1179 (1989) in the form of an "Opinion and Dissent" letter written by David Cahill, Legal Counsel for the House Judiciary Committee. Therein, Cahill tracks the emergence of the words "substantial and compelling" in the statute and states that the phrase was intentionally left undefined "so that the trial bench would have the tools available to do justice in individual circumstances":

> To the Editor:
> George Ward's article in the October *Bar Journal* entitled "Drug Sentences: Reining in Knight-Errantry" is an inaccurate report on the legislative history of the two public acts (1987 PA 275 and 1988 PA 47) which allow a judge not to impose certain mandatory minimum drug sentences if the judge finds that there are "substantial and compelling reasons to do so."
> The case of *People v Diamond,* 144 Mich App 787, [376 NW2d 192 (1985)], lv den 424 Mich 894 [1986], was not considered by the Legislature when these public acts were drafted. Furthermore, Michigan does not have a "presumptive sentencing"

system. Therefore, any use of the words "substantial and compelling" as a term of art in such a system, in Minnesota or elsewhere, is irrelevant to the interpretation of Michigan statutes which are not part of such a system. Finally, the lengthy list of sentencing factors which Mr. Ward believes should not be "substantial and compelling reasons" was never presented to or considered by the Michigan Legislature.

Instead, the "substantial and compelling reasons" departure language originated with a bill about seat belts.

House bill 4343 of the 1987-88 legislative session contained language which would have required a judge to impose a certain minimum fine for a seat belt violation unless the judge "makes a finding on the record or in writing that, under the circumstances surrounding the infraction, the imposition of the full amount of the fine and costs or of any fine and costs would be unjust." HB 4343 did not make it into law, but the idea of a mandatory minimum, coupled with a "departure" so that the judge could avoid an individual injustice, had been planted in the minds of several legislators.

In the summer of 1987, the Speaker of the House and the Senate Majority Leader directed Representative Perry Bullard and Senator Jack Welborn to prepare a package of anti-crime legislation. Some prosecutors and judges had told these legislators that the drug sentencing system in effect at that time, with its totally inflexible "mandatory minimum" scheme, delayed the resolution of many cases and occasionally produced unjust results. Therefore, these two legislators agreed to propose the "substantial and compelling reasons" downward departure mechanism so that the trial bench would have the tools available to do justice in individual circumstances.

The "substantial and compelling" phrase itself was taken from a series of bills on sentencing guidelines which also did not become law.

The two public acts in question, creating the "substantial and compelling" departure in drug

cases, then became law as Representative Bullard and Senator Welborn had proposed.

As neither "substantial" nor "compelling" are defined, the words have their ordinary meanings.

David Cahill, Legal Counsel House Judiciary Committee

II

Despite such history, a panel of this Court in *People v Downey*, 183 Mich App 405; 454 NW2d 235 (1990), severely restricted the discretion of sentencing judges to deviate from the presumptive minimums. Obviously influenced by Assistant Prosecutor Ward's article, *Drug Sentences: Reining in Knight-Errantry*, 68 Mich B J 976 (1989), this Court created standards and hurdles which were never contemplated by the Legislature. In particular, the *Downey* Court invented an "objective/subjective" dichotomy to serve as a litmus test for whether a particular reason will prove to be "substantial and compelling." The test created by the *Downey* panel is as follows:

> We should, however, state that the term "substantial and compelling" *implies that the factor must be capable of verification and thus is an objective standard as opposed to a subjective one.* [*Downey, supra* at 415. Emphasis added.]

Additionally, *Downey* established a demarcation between prearrest and postarrest conduct:

> [A] defendant's protestations of remorse and his actions after his arrest which are relied upon to show his remorse and rehabilitative potential are much more subjective and thus would not, absent other exceptional circumstances, be appropriate factors to consider. [*Id.* at 415-416.]

Although reasons based upon a defendant's objective and verifiable prearrest conduct may prove to be the most "substantial and compelling," I find no language in the statute or legislative history to support such a restriction.

The role of the judiciary is to construe statutes as intended by the Legislature, not to rewrite them. *Lapeer Co Dep't of Social Services v Harris,* 182 Mich App 686, 689; 453 NW2d 272 (1990). Absent a statutory definition or controlling judicial definition, we must comply with the legislative directive to construe statutory language according to the "common and approved usage" of the words. MCL 8.3a; MSA 2.212(1);[1] *State ex rel Wayne Co Prosecuting Attorney v Levenburg,* 406 Mich 455, 465; 280 NW2d 810 (1979); *Fenton Area Public Schools v Sorenson-Gross Const Co,* 124 Mich App 631, 639; 335 NW2d 221 (1983), lv den 419 Mich 856 (1984). In doing so, resort to dictionary definitions is appropriate. *Id.*

The term "substantial" is defined in *Webster's Third New International Dictionary, Unabridged Edition* (1981) as

not seeming or imaginary: not illusive . . . being of moment: important, essential . . . considerable in amount, value or worth . . . soundly based: carrying weight.

Similarly, the *Random House Dictionary of the English Language: Unabridged Edition* (1987) defines "substantial" as

---

[1] MCL 8.3a; MSA 2.212(1) provides:

All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

of ample or considerable amount, quantity . . . basic or essential; fundamental . . . of real worth, value, or effect . . . essential, material, or important.

According to *Random House,* the term "compelling" means "having a powerful and irresistible effect." More to the point is *Webster's,* which defines "compelling" as

to urge irresistibly by moral or social pressure . . . to force by personal temperament or other subjective considerations[2] . . . to force or cause irresistibly . . . to exert an irresistible influence. [Emphasis added.]

In light of these definitions and the Legislature's expressed intent to expand sentencing discretion, I cannot subscribe to the *Downey* restrictions which limit the sentencing court's consideration to prearrest factors capable of objective verification. The terms used by the Legislature plainly contemplate a broader scope of relevant criteria. The prosecutor's argument that "substantial and compelling" reasons *should* be limited to a defendant's objective and verifiable prearrest conduct is a public-policy argument which should more appropriately be addressed to the Legislature. This is particularly true with penal statutes, which are to be strictly construed. *People v Hall,* 391 Mich 175, 189-190; 215 NW2d 166 (1974). The litmus test invented by the *Downey* panel is a creative construction of a penal statute which is not evident from a fair reading of the words used by the Legislature.

I note that the *Downey* test is reminiscent of the

[2] The *Downey* Court either overlooked or ignored this section of the definition which is included in both the 1966 and 1981 editions of *Webster's Third New International Dictionary, Unabridged Edition.* See *Downey, supra* at 410.

discarded no-fault automobile insurance threshold standard of an "objectively manifested" injury created by *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), and eliminated by *DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986). In its former opinion, the Supreme Court held that for an injury to exceed the tort threshold of "serious impairment of body function" it was necessary for the injury to be "objectively manifested." The requirement was construed by our Court to mean that threshold injuries must be subject to "medical measurement." *Williams v Payne,* 131 Mich App 403, 409-410; 346 NW2d 564 (1984). Recovery was only allowed for such "verifiable" injuries. Mere subjective complaints unsupported by "objective" findings were deemed insufficient.

Shortly after their judicial promulgation, the "objective," "verifiable," and "medical measurement" standards of *Cassidy* and its progeny were discarded by the Supreme Court as "almost insurmountable obstacle[s]" not intended by the Legislature. *DiFranco, supra* at 66. Similarly, I believe that the *Downey* test will ultimately be overturned by the Supreme Court as an improper exercise of judicial legislation.

### III

In the instant case, the sentencing judge found on the record substantial and compelling reasons to depart from the presumptive minimum terms on the basis of the following factors for defendant Krause: (1) no previous criminal record; (2) a work history; (3) significant family support, including present employment with a family business; (4) diminished culpability for the crime because of his "middleman" position; (5) a previous substance-abuse problem (which may have clouded his

thought process); (6) an amount of mixture containing cocaine of 237 grams which was minimally over the threshold amount of 225 grams necessary for the crime charged; and (7) defendant's cooperation with the police on other matters.

As to defendant Newton, the sentencing judge justified a departure on the basis of a combination of the following factors: (1) no previous criminal record; (2) a "very good" work history; (3) good family support; (4) a troubling divorce in the family at the time of the incident (which may have influenced the young defendant's behavior); and (5) defendant's middleman position in the crime with "the main dealer getting away with the bulk of the proceeds from this event."

If one disregards *Downey's* "objective/subjective" dichotomy, this combination of factors would be deemed to be "substantial and compelling" under our former decision:

> [W]e believe that the factors which go into determining the rehabilitative potential of the defendant may be considered when determining if substantial and compelling reasons exist to deviate from the presumptive sentence.
>
> We agree with the prosecutor that race and economic status are not factors which should be considered. *People v Coles,* 417 Mich 523, 546; 339 NW2d 440 (1983). A nonexhaustive list of factors which may be considered under subsection 7401(4) are: (1) the facts of the crime which mitigate defendant's culpability (see for example the factors listed in Minnesota's and Washington's statutes), (2) defendant's prior record, (3) defendant's age, and (4) defendant's work history. [*Downey, supra* at 414-415.]

I would adopt and affirm this *non*exhaustive list of factors but reject *Downey's* objective/subjective and prearrest limitations. While I agree that the

sentencing judge does not possess "unfettered discretion" to depart from the presumptive minimums, discretion nevertheless exists in appropriate cases. I would hold that the articulated reasons for deviation need not necessarily be "objective" and "verifiable" so long as they are "substantial and compelling."

We have long recognized that sentencing is not a function of the appellate court. Rather, sentencing rests exclusively within the province of the sentencing judge who after having seen and heard the defendant is uniquely positioned to evaluate the defendant's credibility, character, and rehabilitative potential. A "subjective" evaluation of such traits is often necessary for effective sentencing. In this regard, we have said that sentencing review must be under a standard which does not intrude on or circumscribe

> the firmly entrenched concept that punishment be left to the trial court's discretion. Such discretion is intricately intertwined with the principles underlying the individualizing of sentences embodied in Michigan case law. [*People v Howell*, 168 Mich App 227, 232; 423 NW2d 629 (1988).]

In sentencing matters, we should not substitute our judgment for that of the sentencing judge absent an abuse of discretion.

I find no abuse of discretion in the instant cases. Substantial and compelling reasons were articulated on the record by the sentencing judge. Furthermore, the sentences imposed on the defendants of five to thirty years are an appropriate social response to the crimes committed and the criminals who committed them.

While I am pleased that the majority has chosen to abandon *Downey's* prearrest conduct limitation, I respectfully dissent from the affirmation of the remainder of the *Downey* test.